FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2018 JUL 12 PM 12: 16

| | |
|---|---|
| UNITED STATES OF AMERICA and the STATE OF FLORIDA ex rel. ROBYN PARKE AND JENNIFER RODRIGUEZ, <br><br> Plaintiffs-Relators, <br><br> v. <br><br> FRESENIUS MEDICAL CARE HOLDINGS, INC., d/b/a AMERICAN ACCESS CARE OF ORLANDO, LLC, <br><br> Defendant. | CASE NO.: <br><br> JURY TRIAL DEMANDED |

## FALSE CLAIMS ACT COMPLAINT AND DEMAND FOR JURY TRIAL

Co-Relators Robyn Parke, RN, and Jennifer Rodriguez, RN (collectively "Relators"), by and through their counsel, hereby file this False Claims Act Complaint and Demand for Jury Trial against Defendant Fresenius Medical Care Holdings, Inc., d/b/a American Access Care of Orlando, LLC (hereinafter "Fresenius" or "Defendant"), and allege as follows:

### NATURE OF ACTION

1. Relators bring this action on behalf of the United States of America against Defendant for its violations of the federal False Claims Act (hereinafter "federal FCA"), 31 U.S.C. § 3729, *et seq.*, and on behalf of the State of Florida for its violations of the Florida False Claims Act (hereinafter "Florida FCA"), section 68.081, *et seq.*, Florida Statutes.

### JURISDICTION AND VENUE

2. This Court has jurisdiction over the claims arising under the federal FCA pursuant to 31 U.S.C. §§ 3732(a) and 3730(b), and 28 U.S.C. §§ 1345 and 1331. This Court has

jurisdiction over the claims arising under the Florida FCA pursuant to 31 U.S.C. §§ 3732(b) and 1367.

3. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because the acts proscribed by 31 U.S.C. § 3729, *et seq.* and section 68.081, *et seq.*, Florida Statutes, and complained of herein, took place in this District.

## PARTIES

4. Relator Robyn Parke, RN, is a licensed Registered Nurse and a resident of Osceola County, Florida. Relator Parke has over ten years' experience as a Registered Nurse, having served in the critical care, hospital administration, ambulatory surgery, and outpatient vascular interventional radiology fields.

5. Relator Parke was employed by Fresenius from April 2015 until September 2017 at American Access Care of Orlando (hereinafter "the Orlando clinic").

6. Relator Jennifer Rodriguez, RN, is a licensed Registered Nurse and a resident of Osceola County, Florida. Relator Rodriguez has over eleven years' experience as a Registered Nurse, having served in a hospital setting in a variety of roles, an outpatient surgery setting, and outpatient dialysis.

7. Relator Rodriguez joined Fresenius in March 2011 and was promoted to Operations Manager on April 1, 2014, and remained with the company until October 2017 at the Orlando clinic.

8. Relators are original sources of this information and have direct and independent knowledge of the information on which the allegations are based and have voluntarily provided the information to the United States and the State of Florida before filing this action under the federal FCA and Florida FCA.

2

9. Defendant Fresenius is a global corporation that provides dialysis care and dialysis access care for more than 290,000 patients worldwide and operates more than 2,200 dialysis centers in North America.

10. Defendant Fresenius's corporate headquarters for the United States is located at 920 Winter Street, Waltham, Massachusetts 02451-1457.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

11. As required by the federal FCA, 31 U.S.C. § 3730(b)(2), and the Florida FCA, section 68.83(3), Florida Statutes, Relators have provided to the Attorney General of the United States, the United States Attorney for the Middle District of Florida, the Attorney General of the State of Florida, and the Chief Financial Officer of the State of Florida a statement of all material evidence and information related to the Complaint. The disclosure statement is supported by material evidence known to Relators at the time of their filing, establishing the existence of Defendant's false claims. The disclosure statement includes attorney-client communications and work product of Relators' attorneys and is submitted to the United States Attorney General, the United States Attorney, the Florida Attorney General, and the Florida Chief Financial Officer in their capacities as potential co-counsel in this litigation; therefore, the disclosure is confidential.

## FEDERALLY FUNDED HEALTHCARE PROGRAMS

12. Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*, establishes the Health Insurance for the Aged and Disabled Program, popularly known as the Medicare program. The Secretary of Health and Human Services (hereinafter "HHS") administers the Medicare Program through the Centers for Medicare and Medicaid Services (hereinafter "CMS").

13. The Medicare program is comprised of four parts. Medicare Part A (hereinafter "Hospital Insurance") provides basic insurance for the costs of hospitalization and post-hospitalization care. 42 U.S.C. §§ 1395c-i-5. Medicare Part B (hereinafter "Medical Insurance") is a federally subsidized, voluntary insurance program that covers the fee schedule amount for doctors' services, outpatient care, medical supplies, and laboratory services, including facility dialysis treatments. 42 U.S.C. §§ 1395j--w-5. Medicare Part C (hereinafter "Medicare Advantage Plans") is a plan offered by private insurers that contract with Medicare to provide Part A and Part B benefits. 42 U.S.C. §§ 1395w-21--w-28. Medicare Part D (hereinafter "Prescription Drug Coverage") is a plan offered by private insurers approved by Medicare to provide basic insurance for prescription drugs. 42 U.S.C. §§ 1395w-101--w-154.

14. Reimbursement for Medicare Part B claims is made by the United States through CMS. CMS, in turn, contracts with fiscal intermediaries to administer and pay Medicare Part B claims from the Medicare Trust Fund. 42 U.S.C. § 1395(u). In this capacity, the fiscal intermediaries act on behalf of CMS. 42 C.F.R. § 421.5(b). Separate payments are made for each Current Procedural Terminology (hereinafter "CPT") code listed on the Medicare Part B claims.

15. Over 500,000 Americans suffer from End-Stage Renal Disease (hereinafter "ESRD"), or Stage V permanent kidney failure, which means that their kidney function is so impaired that they must undergo dialysis to survive. The typical ESRD patient has dialysis treatments three times a week. Each treatment lasts about four (4) hours. The only "cure" for an ESRD patient is a kidney transplant, but there are not enough kidney donors available. ESRD patients are typically very sick and vulnerable.

16. Most ESRD patients in the United States are treated at dialysis clinics and dialysis access clinics that are part of large, for-profit chains like Fresenius. Medicare Part B covers ESRD treatment for individuals who qualify for Social Security benefits; some individuals who are already part of a Medicare Advantage Plan under Part C may elect to continue that coverage. Medicaid provides ESRD benefits for its beneficiaries who do not qualify for Medicare ESRD coverage.

17. Individuals with health insurance are not eligible for Medicare coverage for the first thirty months of ESRD treatment. Thus, other federal health insurance programs, including the Federal Employees Health Benefit Program (which provides health insurance for federal employees, retirees, and the survivors of such individuals), CHAMPUS/TRICARE (providing health care insurance to individuals and dependents affiliated with the armed forces), and CHAMPVA (providing health care coverage to families of disabled veterans), and Medicare Advantage Plans (Part C) also pay for dialysis and ancillary ESRD treatments. Medicare is a secondary payer during these months.

18. In order to receive Medicare funds, enrolled providers like Fresenius are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all applicable policies and procedures issued by the states.

19. Among the rules and regulations which enrolled providers like Fresenius agree to follow are to: (a) bill Medicare for only those covered services which are medically necessary; (b) not bill Medicare for any services or items which were not performed or delivered in accordance with all applicable policies, nor submit false or inaccurate information relating to provider costs or services; (c) not engage in any act or omission that constitutes or results in over-utilization of services; (d) comply with state and federal statutes, policies, and regulations

applicable to the Medicare Program; and (e) not engage in any illegal activities related to the furnishing of services to recipients.

20. The Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b) (hereinafter "AKS"), arose out of Congressional concern that if those who influence healthcare decisions were permitted to have a financial stake in selection of healthcare goods and services, their judgment might be tainted, resulting in goods and services being provided that are medically unnecessary, of poor quality, or even harmful.

21. To protect the integrity of government programs, in 1972 Congress enacted a *per se* prohibition against the payment of kickbacks in any form, regardless of whether the particular kickback gave rise to overutilization or poor quality of care, strengthening that statute in 1977 and again in 1987. *See* Social Security Amendments of 1972, Pub. L. No. 92-603, §§ 242(b) and (c); 42 U.S.C. § 1320a-7b, Medicare-Medicaid Antifraud and Abuse Amendments, Pub. L. No. 95142; Medicare and Medicaid Patient and Program Protection Act of 1987, Pub. L. No. 100-93.

22. Violation of the AKS subjects the perpetrator to exclusion from federal health care programs, civil monetary penalties of $50,000 per violation, and three times the amount of remuneration paid. 42 U.S.C. § 1320a-7b(a)(7) and (b)(7).

23. Claims for services that are provided in violation of the AKS are false.

24. Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.*, establishes Medicaid, a federally assisted grant program for the States. Medicaid enables the States to provide medical assistance and related services to needy individuals. CMS administers Medicaid on the federal level. Within broad federal rules, however, each state decides who is eligible for Medicaid, the services covered, payment levels for services, and administrative and operational procedures.

25. At all times relevant to this Complaint, the United States provided funds to the States through the Medicaid program pursuant to Title XIX of the Social Security Act, 42 U.S.C. § 1396, *et seq.* Enrolled providers of medical services to Medicaid recipients are eligible for payment for covered medical services under the provisions of Title XIX of the 1965 Amendments to the Federal Social Security Act.

26. By becoming a participating provider in Medicaid, enrolled providers agree to abide by the rules, regulations, policies, and procedures governing claims for payment, and to keep and allow access to records and information as required by Medicaid. In order to receive Medicaid funds, enrolled providers, together with authorized agents, employees, and contractors, are required to abide by all the provisions of the Social Security Act, the regulations promulgated under the Act, and all applicable policies and procedures issued by the State.

27. 42 C.F.R. § 455, *et seq.*, expressly states that a provider must certify that it is in compliance with all federal and state statutes and regulations in order to receive payment from Medicaid.

28. 42 U.S.C. § 1320a-7a(a)(a), which applies to a covered entity such as Fresenius, prohibits the offering or transferring of "remuneration to any individual eligible for benefits under subchapter XVIII of this chapter, or under a State health care program (as defined in section 1320a-7(h) of this title) that such person knows or should know is likely to influence such individual to order or receive from a particular provider, practitioner, or supplier any item or service for which payment may be made, in whole or in part, under subchapter XVIII, or a State health care program . . . ."

29. Pursuant to Florida Administrative Code section 59G-5.020, all Medicaid providers enrolled in the Florida Medicaid program and billing agents who submit claims to

7

Florida Medicaid on behalf of an enrolled Medicaid provider must comply with the provisions of the Florida Medicaid Provider General Handbook.

30. Pursuant to the Florida Medicaid Provider General Handbook, when presenting a claim for payment under the Medicaid program, a provider has an affirmative duty to supervise the provision of, and be responsible for, goods and services claimed to have been provided, to supervise and be responsible for preparation and submission of the claim, and to present a claim that is true and accurate and that is for goods and services that, *inter alia*, have actually been furnished to the recipient by the provider prior to submitting the claim; when required by federal or state law, the provider rendering the service is actively licensed or certified to provide the service; are Medicaid-covered goods or services that are medically necessary; are of a quality comparable to those furnished to the general public by the provider's peers; and are provided in accord with applicable provisions of all Medicaid rules, regulations, handbooks, and policies and in accordance with federal, state, and local law.

31. At all times relevant to this Complaint, Fresenius was enrolled in, and sought reimbursement from, Medicare and Medicaid, as well as other Government-funded programs including, but not limited to, TRICARE, Federal Employees Health Benefits Program, and State Children's Health Insurance Programs (collectively referred to herein as "Federal Insurance").

32. At all times relevant to this Complaint, Federal Insurance constituted a significant source of gross patient revenue for Defendant Fresenius.

## SPECIFIC ALLEGATIONS

33. During Relators' tenure at Fresenius, they observed that it was the Orlando clinic's practice to entice patients by offering free transportation, food, and other items in order to increase the patient population.

34. Specifically, Relators observed on a daily basis that marketers, including Tracy Renee, Renee Soodi, Donte Harris, and Oscar Ocasio, reached out to both new patients and dialysis centers to arrange transportation as an inducement to get patients to come to the Orlando clinic.

35. The majority of the new patients lived more than twenty-five (25) miles from the Orlando clinic.

36. In addition to new patients, the marketers also arranged transportation for patients living more than twenty-five (25) miles from the Orlando clinic who did not live in a rural area, as that term is defined in 42 C.F.R. § 1001.952(bb).

37. Offering transportation to patients was done to entice such patients to come to the Orlando clinic for a checkup appointment.

39. Relators are aware of the following individuals who were routinely offered transportation without regard to medical necessity or distance:[1] (1) B.B.; (2) E.H.; (3) W.L.; (4) T.O.; (5) JR; (6) B.R.; (7) GS; (8) J.T.; (9) W.V-M.; (10) D.W.; and (11) A.Y.

40. The foregoing patients represent only a small sampling of the numerous patients induced by Fresenius to come to the Orlando clinic due to the transportation enticement scheme.

41. Fresenius spends thousands of dollars to transport patients and their family members to these clinics.

---

[1] The patient names from the following list have been removed from the complaint to protect their privacy. Relators will file a sealed list of patient names pursuant to Local Rule 1.09 ("Exhibit A").

42. Fresenius has entered into agreements with multiple companies to provide transportation. These companies include, but are not limited to: MA Alternative Transport Services, Inc.; Unicare Transport Service, LLC; We Honor Your Voice & Path, LLC; Rural/Metro Corporation of Florida; and AAA Transportation, LLC.

43. Fresenius also provides food, duffle bags, and other promotional items to patients and dialysis centers in an effort to entice patients to come to the Orlando clinic.

44. Fresenius spends more than $50 per patient per year in food, duffle bags, and other promotional items.

45. Fresenius marketers, including Tracy Renee, Renee Soodi, Donte Harris, and Oscar Ocasio call patients and dialysis centers daily to inform them of the meals, duffle bags, and other items provided by the Clinic.

46. Fresenius continues to entice patients to come to the Orlando clinic with meals, duffle bags, and other items.

47. Relators have personal knowledge of similar schemes occurring at multiple Fresenius locations, including:: American Access Care of Jacksonville, Vascular Specialists of Central Florida, Vascular Interventions of Tampa, and American Access Care of Miami.

Specifically, Relator Parke has personal knowledge of the **Tampa** location enticing patients with transportation, as she worked there on occasion and spoke with Mia Burkhard, the Center Manager for the Tampa clinic, regarding the enticements.

As to the **Jacksonville** location, Relator Rodriguez spoke with Melissa Cofield, the Manager of the Jacksonville clinic, regarding the transportation company used by that clinic. Relator Parke also worked at the Jacksonville clinic and witnessed the enticements provided to patients.

Relator Rodriguez also has personal knowledge of the **Miami** clinic enticing patients with transportation because while she was in training at the Miami Clinic, the Manager of that clinic, Gabrielle Menese Girodani, discussed the difficulties she was having with the contracted transportation company.

Relator Parke also has personal knowledge of enticements being provided at the **Vascular Specialists of Central Florida** location, as she worked there on occasion.

48. This conduct violates the AKS and accordingly, each claim for payment for such services is false.

49. Defendant further capitalized on this scheme from 2011 to 2014 by bringing in patients to the Orlando clinic for medically unnecessary follow up appointments at a rate about three times more frequently than the standard of care. The following is but a sampling of the patients seen in the Orlando clinic more often than medically necessary.

(I) Patient B.P. was seen four times within a three-month period.

(II) Patient J.G. was seen three times within a three-month period.

(III) Patient R.C. was seen only a month after his procedure was performed.

(IV) Patient P.G. was seen seven times in an eight-month period.

(V) Patient A.A. was seen four times in a four-month period.

(VI) Patient C.H. (male) was seen three times in a three-month period.

(VII) Patient W.L. was given an unnecessary procedure despite not presenting with any issues with dialysis.

(VIII) Patient J.F. underwent a procedure and had a follow-up appointment within one month. He was then brought in for an unnecessary procedure approximately one month later.

(IX) Patient C.H. (female) was brought in for two unnecessary procedures.

(X) Patient S.B. was brought in three times over a two-month period and had two unnecessary procedures performed on her.

(XI) Patient S.M.C. had four unnecessary procedures performed on her over a six-month period and had multiple follow-up appointments in that period.

(XII) Patient F.G. had two unnecessary procedures performed on her in a two-month period.

## COUNT I
## VIOLATION OF 31 U.S.C. § 3729(a)(1)(A)

50. Relators hereby incorporate the allegations set forth in paragraphs 1 through 49 by reference.

51. Defendant knowingly, or in reckless disregard or deliberate ignorance of the falsity of the information involved, presented, or caused to be presented, false or fraudulent claims for payment or approval to the federal Government.

52. As a result of Defendant's fraudulent actions, the United States has suffered damages.

53. Relators have retained counsel to represent them in this matter and have incurred, and will continue to incur, attorneys' fees and costs.

## DEMAND FOR RELIEF

WHEREFORE, Relators demand judgment against Defendant for:

(a) Actual damages;

(b) Treble damages;

(c) Civil penalties of $11,000.00 per false claim that Defendant presented, or caused to be presented, to the federal Government;

(d)  Pre- and post-judgment interest;

(e)  Attorneys' fees, costs, and expenses which the Relators necessarily incurred in bringing and pursuing this case;

(f)  Permanent injunctive relief to prevent any recurrence of the false claims for which redress is sought in this Complaint;

(g)  That Relators be awarded the maximum amount allowed to them pursuant to the False Claims Act; and

(h)  Any other such relief as this Court deems just and proper.

## COUNT II
## VIOLATION OF 31 U.S.C. § 3729(a)(1)(B)

54.  Relators hereby incorporate the allegations set forth in paragraphs 1 through 49 by reference.

55.  Defendant knowingly, or in reckless disregard or deliberate ignorance of the falsity of the information involved, made, used, or caused to be made or used, false records and statements that were material to false or fraudulent claims submitted to the federal Government.

56.  As a result of Defendant's fraudulent actions, the United States has suffered damages.

57.  Relators have retained counsel to represent them in this matter and have incurred, and will continue to incur, attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Relators demand judgment against Defendant for:

(a)  Actual damages;

(b)  Treble damages;

(c)  Civil penalties of $11,000.00 per false record or statement material to a false or fraudulent claim made by, or caused to be made by, Defendant;

(d)  Pre- and post-judgment interest;

(e) Attorneys' fees, costs, and expenses which the Relators necessarily incurred in bringing and pursuing this case;

(f) Permanent injunctive relief to prevent any recurrence of the false claims for which redress is sought in this Complaint;

(g) That Relators be awarded the maximum amount allowed to them pursuant to the federal FCA; and

(h) Any other such relief as this Court deems just and proper.

## COUNT III
## VIOLATION OF 31 U.S.C. § 3729(a)(1)(C)

58. Relators hereby incorporate the allegations set forth in paragraphs 1 through 49 by reference.

59. Defendant conspired to commit violations of 31 U.S.C. § 3729(a)(1)(A) and 31 U.S.C. § 3729(a)(1)(B).

60. Relators have retained counsel to represent them in this matter and have incurred, and will continue to incur, attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Relators demand judgment against Defendant for:

(a) Actual damages;

(b) Treble damages;

(c) Civil penalties of $11,000.00 per false claim that Defendant conspired to present, or cause to be presented, to the federal Government;

(d) Civil penalties of $11,000.00 per false record or statement material to a false or fraudulent claim that Defendant conspired to make, or to cause to be made;

(e) Pre- and post-judgment interest;

(f) Attorneys' fees, costs, and expenses which the Relators necessarily incurred in bringing and pursuing this case;

(g) Permanent injunctive relief to prevent any recurrence of the false claims for which redress is sought in this Complaint;

(h) That Relators be awarded the maximum amount allowed to her pursuant to the federal FCA; and

(i) Any other such relief as this Court deems just and proper.

## COUNT IV
## VIOLATION OF SECTION 68.082(2)(a), FLORIDA STATUTES

61. Relators hereby incorporate the allegations set forth in paragraphs 1 through 49 by reference.

62. Defendant knowingly, or in reckless disregard or deliberate ignorance of the falsity of the information involved, presented, or caused to be presented, false claims for payment or approval.

63. As a result of Defendant's fraudulent actions, the State of Florida has suffered damages.

64. Relators have retained counsel to represent them in this matter and have incurred, and will continue to incur, attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Relators demand judgment against Defendant for:

(a) Actual damages;

(b) Treble damages;

(c) Civil penalties of $11,000.00 per false claim that Defendant presented or caused to be presented;

(d) Pre- and post-judgment interest;

(e) Attorneys' fees, costs, and expenses which the Relators necessarily incurred in bringing and pursuing this case;

(f) Permanent injunctive relief to prevent any recurrence of the false claims for which redress is sought in this Complaint;

(g) That Relators be awarded the maximum amount allowed to them pursuant to the Florida FCA; and

(h) Any other such relief as this Court deems just and proper.

## COUNT V
## VIOLATION OF SECTION 68.082(2)(b), FLORIDA STATUTES

65. Relators hereby incorporate the allegations set forth in paragraphs 1 through 49 by reference.

66. Defendant knowingly, or in reckless disregard or deliberate ignorance of the falsity of the information involved, made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim.

67. As a result of Defendant's fraudulent actions, the State of Florida has suffered damages.

68. Relators have retained counsel to represent them in this matter and have incurred, and will continue to incur, attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Relators demand judgment against Defendant for:

(a) Actual damages;

(b) Treble damages;

(c) Civil penalties of $11,000.00 per false record or statement material to a false or fraudulent claim made by, or caused to be made by, Defendant;

(e) Pre- and post-judgment interest;

(f) Attorneys' fees, costs, and expenses which the Relators necessarily incurred in bringing and pursuing this case;

(g) Permanent injunctive relief to prevent any recurrence of the false claims for which redress is sought in this Complaint;

(h) That Relators be awarded the maximum amount allowed to them pursuant to the Florida FCA; and

(i) Any other such relief as this Court deems just and proper.

## COUNT VI
## VIOLATION OF SECTION 68.082(2)(c), FLORIDA STATUTES

69. Relators hereby incorporate the allegations set forth in paragraphs 1 through 49 by reference.

70. Defendant conspired to commit violations of section 68.082(2), Florida Statutes.

71. Defendant committed overt acts, as set forth above, in furtherance of that conspiracy, causing damage to the State of Florida.

72. Relators have retained counsel to represent them in this matter and have incurred, and will continue to incur, attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Relators demand judgment against Defendant for:

(a) Actual damages;

(b) Treble damages;

(c) Civil penalties of $11,000.00 per conspiracy;

(d) Pre- and post-judgment interest;

(e) Attorneys' fees, costs, and expenses which the Relators necessarily incurred in bringing and pursuing this case;

(f) Permanent injunctive relief to prevent any recurrence of the false claims for which redress is sought in this Complaint;

(g) That Relators be awarded the maximum amount allowed to them pursuant to the Florida FCA; and

(h) Any other such relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Relators hereby respectfully demand trial by jury on all issues and counts triable of right before a jury.

Dated: July 12, 2018

Respectfully submitted,

/s/ *Jill S. Schwartz, Esquire*
Jill S. Schwartz, Attorney at Law
Florida Bar No. 523021
Lauren R. Robertson, Attorney at Law
Florida Bar No. 109236
John M. Hunt, Esquire
Florida Bar No. 0091168
Jill S. Schwartz & Associates, P.A.
655 West Morse Boulevard, Suite 212
Winter Park, Florida 32789-3745
Telephone: (407) 647-8911
Facsimile: (407) 628-4994
jschwartz@schwartzlawfirm.net
lrobertson@schwartzlawfirm.net

Julie Bracker, Attorney at Law
Georgia Bar No. 073803
Bracker & Marcus LLC
3225 Shallowford Road, Suite 1120
Marietta, Georgia 30062
Telephone: (770) 988-5035
Facsimile: (678)648-5544
Julie@FCACounsel.com